THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
NORTH CAROLINA
NORTHERN DIVISION

5:01-CV-65-BO

FILED
JUL 31 2001
DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP. CLERK

LEWIS S. THORP and NANCY Y. THORP, )
)
)
Plaintiffs, )
)
v. )
)
CENTURA BANK, )
)
Defendant. )

**NOTICE OF REMOVAL**
28 U.S.C. § 1441
42 U.S.C. § 4001 et seq.

Defendant, Centura Bank, hereby gives this Court notice of removal pursuant to 42 U.S.C. §4001, et seq. and 28 U.S.C. §1441. As the basis for the removal, Defendant states the following:

1. Plaintiffs are citizens of the State of North Carolina.

2. Defendant is a corporation incorporated in the State of North Carolina and with its principal place of business in Rocky Mount.

3. Plaintiffs have filed this action in the State of North Carolina, Nash County Superior Court;

4. This action is pending in Nash County Superior Court;

5. Defendant was served with process on or about July 3, 2001 and the time for removal has not elapsed.

6. The matter in controversy between the Plaintiffs and the Defendant contains issues regarding the Natural Flood Insurance Act of 1973 as found in 42 U.S.C. §4001 et seq. and therefore presents a question of Federal jurisdiction and, upon information and belief, is removable pursuant to 28 U.S.C. §1441.

Attached hereto is a copy of the Civil Summons and Complaint, which documents constitute all of the process, pleadings and orders served upon Defendant in the aforementioned action.

This the 31st day of July, 2001.

BROWN, CRUMP, VANORE & TIERNEY, L.L.P.

By: _____
R. Scott Brown
NC State Bar No. 13435
P.O. Box 1729
Raleigh, NC 27602
Telephone: (919) 835-0909
Attorney for Defendant

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served upon counsel for all parties by ( ) Federal Express; ( ) Hand Delivery; (✓) United States Mail, first class postage prepaid, addressed as follows:

Jeffrey A. Batts
Batts, Batts & Bell
P.O. Drawer 4847
Rocky Mount, NC 27803
Attorney for Plaintiffs

This the 31st day of July, 2001.

BROWN, CRUMP, VANORE & TIERNEY, L.L.P.

By: _____
R. Scott Brown
NC State Bar No. 13435
P.O. Box 1729
Raleigh, NC 27602
Telephone: (919) 835-0909
Attorney for Defendant

J

| STATE OF NORTH CAROLINA | File No. 01-CVS-1331 |
|---|---|
| Nash County | In The General Court Of Justice<br>☐ District ☒ Superior Court Division |

| Name Of Plaintiff | |
|---|---|
| Lewis S. Thorp and Nancy Y. Thorp | |
| Address | **CIVIL SUMMONS** |
| 141 Candlewood Road | |
| City, State, Zip | |
| Rocky Mount, NC  27804 | |
| VERSUS | G.S. 1A-1, Rules |
| Name Of Defendant(s) | ☐ Alias and Pluries Summons |
| Centura Bank | Date Last Summons Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Centura Bank<br>c/o John B. Fleming, Jr.<br>Registered Agent<br>Post Office Box 1220<br>Rocky Mount, NC  27802 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued 6-28-01 | Time 4:49 ☐ AM ☒ PM |
|---|---|---|
| Jeffrey A. Batts<br>Post Office Drawer 8228<br>Rocky Mount, NC  27804-1228 | Signature *Annie Pearl Puckett* | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended thirty (30) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100  Case 5:01-cv-00565-BO   Document 1   Filed 07/31/01   Page 4 of 12  RECEIVED JUL 0 3 2001

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Name Of Defendant |
|---|---|
|  |  |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Name Of Defendant |
|---|---|
|  |  |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Date Received | Name Of Sheriff |
|---|---|---|
|  |  |  |
| Paid By | Date Of Return | County |
|  |  |  |
|  |  | Deputy Sheriff Making Return |

AOC-CV-100, Side Two
Rev. 9/96

| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
|---|---|
| | SUPERIOR COURT DIVISION |
| NASH COUNTY | 01-CVS-_____ |

| LEWIS S. THORP and | ) | |
| NANCY Y. THORP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | COMPLAINT |
| vs. | ) | (Jury Trial Demanded) |
| | ) | |
| CENTURA BANK, | ) | |
| | ) | |
| Defendant. | ) | |

COME NOW the plaintiffs, Lewis S. Thorp and Nancy Y. Thorp, through counsel, and complaining of the defendant Centura Bank, allege and say:

1. Plaintiffs Lewis S. Thorp and Nancy Y. Thorp (hereinafter sometimes "the Thorps") are husband and wife and are citizens and residents of Nash County, North Carolina.

2. Defendant Centura Bank ("Centura") is a North Carolina banking corporation having its principal office in Nash County, North Carolina.

3. On or about March 15, 1999, the Thorps obtained a mortgage loan from Centura in the principal amount of $166,300 (the "Loan"), to be secured by the primary residence of the Thorps, located at 141 Candlewood Rd., Rocky Mount, Nash County, North Carolina (the "Residence").

4. One of the requirements of the Loan was that the Residence should carry flood insurance in the full amount of the Loan, as required by the National Flood

1

Insurance Act, 42 USC §4001 *et seq.* (the "Act"). Under the requirements of the Act, if the borrower does not secure flood insurance as required for a particular loan, the lender is required to "force place" the insurance coverage and bill the borrower for the costs of such flood insurance.

5. The Thorps were unaware that the Act required flood insurance in the full amount of the Loan, and asked that they be allowed to continue existing flood insurance coverage in the amount of approximately twenty-five percent (25%) of the loan, or $41,200 rather than $166,300 as required by the Act.

6. Centura agreed that the Thorps could secure flood insurance in the reduced amount of $41,200 rather than $166,300 as required by the Act.

7. Upon information and belief, Centura is aware, and at all times relevant to the acts complained of, was aware, that the Act required flood insurance for the Loan in the full amount of the Loan.

8. Centura willfully disregarded the requirements of the Act in order to ensure that the Thorps would obtain the Loan from Centura. Specifically, in disregard of the requirements of the Act:

    (a) Centura did not require flood insurance in the full amount of the loan at the closing of the loan and before disbursing funds, as required by the Act; and

    (b) Centura did not "force place" flood insurance in the full amount of the Loan, as required by the Act; and

    (c) Centura, upon information and belief, expressly agreed with the insurance agent for the Thorps or otherwise that the Thorps could obtain flood insurance for the Residence in connection with the Loan that was only a small portion of the amount required by the Act; and

(d) Centura, upon information and belief, willfully disregarded and violated the requirements of the Act in order to ensure that the Loan would be obtained from Centura by the Thorps rather than another lending institution.

8. On or about September 16, 1999, and for several days thereafter, the Residence was flooded in the aftermath of Hurricane Floyd, and sustained exceptional and extensive damage.

9. Because the Thorps had been allowed by Centura to purchase flood insurance for the Loan in the amount of $41,200 rather than required by Centura, in accordance with law, to purchase flood insurance for the Loan in the full amount of the Loan, the Thorps received only the lesser amount, or $41,200, to apply to the exceptional and extensive damage caused by the flood.

10. The Thorps subsequently learned that the Act required as a matter of federal law that flood insurance for the Loan be acquired in the full amount of the loan. Centura has not informed the Thorps as to why it did not comply with the Act as it applied to the Loan.

11. Upon information and belief, Centura's actions as alleged herein were taken with the intention of securing the Loan for the Thorps upon the Residence, and in purposeful and intentional disregard of the requirements of the Act.

12. In the alternative, Centura's actions as alleged herein are direct violations of the Act, which Act devolves upon Centura a duty to ensure that full flood insurance protection is secured with respect to applicable loans, and Centura's actions in deliberately waiving the absolute requirements of the Act, or in the alternative failing to ensure compliance with the same, constitutes gross negligence.

13. The intentional, willful and purposeful disregard of the Act by Centura, or in the alternative, the gross negligence of Centura in waiving or failing to secure compliance with the requirements of the Act, have directly and proximately caused damage to the Thorps in the amount of the reduction allowed by Centura in flood insurance coverage, or approximately $125,100, or such other amount as shall be proven at trial.

14. Upon information and belief, Centura engaged in a pattern of waiving or otherwise failing to secure compliance with the requirements of the Act with respect to other loans made by Centura, in order to gain a competitive advantage over lending institutions that refused to waive or otherwise avoid the requirements of the Act.

## COUNT ONE
## INTENTIONAL MISCONDUCT

15. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 14 above.

16. The intentional actions of Centura as set forth herein, did actually and proximately cause actual loss and damage to the Thorps in the amount of $125,100, or such other amount as shall be proven at trial.

17. Plaintiffs are entitled to have and receive of Centura the sum of $125,100, plus interest from and after September 16, 1999, or such other amount as shall be proven at trial.

18. Plaintiffs are additionally entitled to punitive damages from Centura in an amount exceeding $10,000, as shall be shown at trial, based on the deliberate, willful, and intentional actions of Centura as described herein.

## COUNT TWO
## GROSS NEGLIGENCE

19. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 18 above.

20. In the alternative to Count One, the actions of Centura as set forth herein constitute gross negligence, and such gross negligence of Centura did actually and proximately cause actual loss and damage to the Thorps in the amount of $125,100, or such other amount as shall be proven at trial.

21. Plaintiffs are entitled to have and receive of Centura the sum of $125,100, plus interest from and after September 16, 1999, or such other amount as shall be proven at trial.

22. Plaintiffs are additionally entitled to punitive damages from Centura in an amount exceeding $10,000, as shall be shown at trial, based on the grossly negligent actions of Centura as described herein.

## COUNT THREE
## UNFAIR AND DECEPTIVE TRADE OR BUSINESS PRACTICES

23. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 22 above.

24. The actions of Centura as described herein, in failing to comply with the requirements of federal law in the industry in which Centura practices, and in doing so, upon information and belief, in order to secure the Loan and gain a competitive advantage over other lending institutions required to comply with the Act, constitute unfair and deceptive trade or business practices and unfair methods of competition prohibited by North Carolina General Statutes § 75-1.1.

25. Such actions in violation of North Carolina statutes did directly and proximately cause damage to the Thorps, and the Thorps are entitled to judgment against Centura, in the amount of $125,100, or such other amount as shall be proven at trial, plus interest from and after September 16, 1999.

26. Plaintiffs are further entitled to have their damages trebled in accordance with North Carolina General Statutes §75-16, and to an award of their attorney fees pursuant to North Carolina General Statutes §75-16.1.

WHEREFORE, Plaintiffs pray that the Court:

1. Enter judgment in favor of Plaintiffs against the Defendant in the amount of $125,100, plus interest from and after September 16, 1999, or such other amount as shall be proven at trial; and

2. Treble said judgment in accordance with North Carolina General Statutes §75-16, or in the alternative, enter judgment in favor of Plaintiffs against the Defendant in an amount exceeding $10,000 for punitive damages in an amount as shall be proven at trial; and

3. Tax the costs of this action to the Defendant; and

4. Award to the Plaintiff its attorney fees pursuant to North Carolina General Statutes § 75-16.1; and

5. Award to the Plaintiff such other and further relief as the Court may deem just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

This the 28th day of June, 2001.

BATTS, BATTS & BELL, LLP

By: _____

Jeffrey A. Batts
State Bar No. 13418
Post Office Drawer 8228
Rocky Mount, NC 27804
(252) 977-6450